UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**KELVIN M. THOMAS, et al,**

    **Plaintiff,**

v.                                                                        Case No.: 3:13cv825

**FTS USA, LLC, et al,**

    **Defendants.**

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Comes now the Plaintiff, Kelvin M. Thomas, by counsel, and for his response in opposition to the Motion to Dismiss of Defendant FTS USA, LLC ("FTS"), Dkt. No. 66, he states:

### I.   OVERVIEW

Kelvin M. Thomas ("Thomas") is a named representative in another class action he brought against Backgroundchecks.com ("BGC"). *Thomas v. Backgroundchecks.com*, 3:13-cv-00029-REP (E.D. Va.). BGC is an unaffiliated consumer reporting agency that sold a employment consumer report to Defendants. The BGC class settlement settled a specific set of claims – the "Released Claims" against a specific set of parties – the "Released Parties." *Id.*, Dkt. No. 78-1, at 39-43, attached hereto as Exhibit "A". FTS' motion is remarkable, claiming that because – out of the context of the BGC settlement agreement and its qualifier of "Released Parties" – an unconnected FCRA claim would match the text in the definition of "Released Claims", Thomas would have released all such claims against anyone, regarding any events, any time or any connection to BGC.

1

But of course, the BGC agreement is not as FTS claims. "Released Claims" is not without its context. And "Released Parties" necessarily and expressly controls and limits the range of the release.[1] Plainly FTS is not a released party. The claims asserted against it in this action were not released or otherwise satisfied by the BGC settlement.

## II. THE BGC RELEASE DOES NOT APPLY TO FTS

### A. FTS is not a "Released party."

The best place to start, of course, is the actual relevant sections of the BGC agreement. The text of the release in the BGC agreement is simple. The BGC class (and Thomas) release the Released Parties from the Released Claims:[2]

**Section 11.1 Release**

Upon the Effective Date, **the Releasing Parties acknowledge the full satisfaction of the Released Claims, and fully, finally, and forever settle, release, and discharge the Released Parties from the Released Claims**.

*Id*., 39. Plainly there must be three categorical thresholds met for the release to apply: the consumer must be a "Releasing Party" (which Thomas is), the challenged claim must be a "Released Claim" (which Thomas' generally would fit), and the party asserting the release must be a "Released Party", which FTS is definitely not.

---

[1] Plaintiff assumes that FTS did not actually read the full BGC agreement or its section on the release. He does not presume the only other alternative – that Defendant is disingenuous and misleading in its characterization and descriptions of the settlement.

[2] Defendants misstate and add language to the actual text of BGC agreement: "The definition of 'Released Claims' encompasses 'all Claims arising or . . . brought under the FCRA . . . (whether related to accuracy, completeness, currency, obsoleteness, privacy, disclosure, authorization, notification, dispute processing, or other requirement)," regardless of the identity of the defendant." (Emphasis in original). The bolded and italized language - "*regardless of the identity of the defendant*" - does not appear in the BGC Settlement Agreement. That is Defendants' addition, although one might overlook that fact, aided by the double emphasis and Defendants' citation only to "Ex. 1," the BGC Settlement Agreement, without any reference to a section or page number. Dkt. No. 67 at 7.

Defendant's memorandum is puzzling. Twilight Zone puzzling. FTS is well represented and has litigated effectively in this case. But the argument I now espouses doesn't make any sense as it ignores entirely the important qualifier "the Released Parties" from the term that the BGC class "settle, release, and discharge **the Released Parties** from the Released Claims." *Id*., §11.1. (emphasis added). FTS's single focus is only the first argues that the FCRA claim brought against it in this action would fit that definition. And standing alone it would. In fact, every action brought against any party by a BGC class member under the FCRA whether in any way connected to FTS would be a released claim. Hence the necessary modifier that the only persons discharged would be the "Released Parties". By the terms of the BGC agreement, "Released Party"[3] is

---

[3] (e) "Released Parties" means the following (regardless of the legal theory by which or capacity in which the person might be asserted to have liability):

    (1) BGC;

    (2) any individual, corporation, or firm controlling, controlled by, or under common control with BGC, but only in that capacity;

    (3) any individual, corporation, or firm controlling, controlled by, or under common control with BGC (and any governmental agency) that supplied information included in a report for which BGC is released, but only in that capacity;

    (4) anyone that succeeds to the business or operations of anyone listed in one or more of Section 11.1(e)(l) through Section 11.1(e)(3) (for example, in a merger), but only in that capacity;

    (5) the former, current, and future directors, officers, trustees, shareholders, partners, contractors, agents, representatives, and employees of anyone listed in one or more of Section 11.1 ( e )(1) through Section 11.1 (e)( 4), but only in that capacity;

    (6) any heirs, successors, devisees, executors, and administrators of any individual listed in one or more of parts Section 11.1 ( e )(2) through

limited to: (a.) BGC itself, (b.) any BGC controlled by BGC (and government entities) that furnished information then reported in a BGC report, but only in that furnisher capacity; (c.) any legal successors, heirs or executors to a or b, (d.) the insurers of the above persons (but only in that capacity) and all of the insurers' successors, employees or agents. *I*d., § 11.1(e).

FTS is none of these persons. It is not a "Released Party." The BGC agreement has no effect on its discharge or exposure to the subject claims in this action.

Defendants rely on *Skill Staff, Inc. v. CVS Caremark Corp.*, 669 F.3d. 1005 (9th Cir. 2012) where the Ninth Circuit affirm the dismissal of a putative class action because the claims were barred by provisions in a settlement agreement. However, FTS ignores the actual text in the *CVS* case release and covenant not to sue. By its express language, the covenant applied to the <u>released parties or any other persons</u> based in whole or in part on any of the defined set of released claims. The retail pharmacies in the California action were such "other persons", and they were being sued for the same conspiracy to

---

Section 11.1 (e)( 5), but only in that capacity;

(7) the insurer of anyone listed in one or more of Section 11.1 ( e )(1) through Section 11.1(e)(6) or any re-insurer of such an insurer, but only in that capacity;

(8) anyone that succeeds to the business or operations of anyone listed in Section 11.1 (e)(7) (for example, in a merger), but only in that capacity;

(9) any individual, corporation, or firm controlling, controlled by, or under common control with anyone listed in one or both of Section 11.1 (e)(7) or Section 11.1 ( e )(8), but only in that capacity; and

(10) the former, current, and future directors, officers, trustees, shareholders, partners, contractors, agents, representatives, and employees of anyone listed in one or more of Section 11.1(e)(6) through Section 11.1(e)(9), but only in that capacity.

*Id*. (emphasis added).

raise prescription drug prices that was at issue in the Massachusetts action that preceded the California case. In fact, on appeal, the Ninth Circuit framed the issue thus:

> There is no ambiguity in the meaning of the "**or any other person**" provision in the *New England Carpenters* settlement agreement and final judgment. The provision bars a "Releaser" from later seeking to recover from "Released Parties" or from "any other person" on a liability theory "based, in whole or in part," on the "Released Claims" in the *New England Carpenters* case. *Skill Staff* is clearly a "Releaser" as defined in the Massachusetts settlement agreement. The claims asserted in the California complaint against the retail pharmacies are clearly related to the Released Claims against McKesson, as defined in the settlement agreement. The "**or any other person**" provision is susceptible to only one interpretation-that the claims *Skill Staff* asserted in the California suit against the retail pharmacies relating to the Released Claims are barred unless the provision is unenforceable.

*Skill Staff,* 669 F.3d at 1015-16 (emphasis added).

Plainly the Defendants do not fall within the definition of "Released Parties" in the BGC Settlement Agreement. Moreover, the BGC Settlement Agreement does not include a covenant not to sue "any other person" as existed in the Massachusetts Settlement Agreement. However "exceedingly similar" FTS claims the language of the BGC Settlement Agreement may be to the language of the Massachusetts Agreement, it could not be more dissimilar with regard to the language pertinent to the *Skill Staff* decision. The BGC Settlement Agreement does not have any comparable provision.

      **B.     The One Satisfaction Rule is Inapplicable.**

Out of caution, Plaintiff addresses what may be Defendant's implicit argument–though not articulated - that Plaintiff is not entitled to a double recovery for the same injury. While there is one set of facts that Thomas alleged for himself, there were at least two separate legal injuries. The injury resulting from the conduct of the consumer reporting agency BGC is based on the violation of certain FCRA requirements applicable

5

only to a CRA. The injury based on the conduct of the Defendants is based on separate FCRA sections and requirements. The case law is unanimous that there is no right of contribution or indemnity among Defendants for liability arising under the FCRA, applying an analysis articulated by the Supreme Court in *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.E.D.2d 500 (1981) (holding there was no federal, common law right of contribution in federal anti-trust actions) and *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.E.D. 2d. 750 (1981) (holding that the employer which had been found liable for violations of the Equal Pay Act and Title VII had no right of contribution against unions that allegedly bore at least partial responsibility for the statutory violations).

The "One Satisfaction Rule" is not available under the FCRA because there is no such defense countenanced by the statute. *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500 and n.2 (4th Cir. 2007). The FCRA imposes distinct duties on different actors in the FCRA scheme – e.g. users versus CRA. *Id*. Defendants in FCRA cases are not tort feasors and their liability is not joint. Each Defendant is separately liable for its own violation of the FCRA. The duties of the respective Defendants arise out of different sections of the FCRA. There is no equitable offset for causes of action arising under the FCRA. *McMillan v. Equifax Credit Info. Servs, Inc.*, 153 F.Supp.2d 129, 132 (D.Conn.2001); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754-55 (N.D.Ill.1997). owhere in the FCRA has Congress created an implied or express right of contribution, indemnification, or offset. *Nelson v. Equifax Info. Servs.*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007)(holding that the lack of statutory or federal common law authority creating an

6

implied or express right of equitable credit, indemnity, or contribution bars such a defense).

With respect to Defendants' brief mention of "double recovery," sometimes called the one satisfaction rule, at page 13 of their MIS, that rule played no role in the *Skill Staff* decision and has no application in this case. Defendants' double recovery argument appears to be that, because the settlement was "in full satisfaction of the Released Claims," and because "Released Claims" encompasses FCRA claims, the claims against it have been satisfied. As noted earlier, Defendants argument relies upon reading individual terms out of context and then asserting additional language such as "regardless of the identity of the defendant."

The double recovery or one satisfaction rule precludes a plaintiff from recovering more than one recovery for the same injuries. Typically, this defense is directed toward a plaintiff that seeks double recovery for his <u>actual</u> damages. Plaintiff has found no cases where defendant has asserted the double recovery rule as a defense to preclude recovery of statutory damages <u>from one defendant</u>, e.g. an employer, based upon a settlement or award of statutory damages against <u>a different defendant</u>, e.g. a CRA, for <u>violations of different Acts or different provisions of the same Act</u>. If that were a viable defense, one would have expected it to be raised each time that a settlement or trial against a CRA is followed by one against an employer or vice versa.

In this case, Plaintiff seeks recovery of statutory damages and punitive damages against different defendants for different statutory violations. Although the two sets of claims may arise in the context of overlapping facts, they do not involve the same operative facts. The claims against BGC arose out of ***its*** <u>preparation and furnishing</u> of

7

background reports on Thomas and others. The claims against FTS and UniTek Global arose out of their <u>procurement and use</u> of those same background reports. While the facts overlap, the operative facts and claims are not the same. Under Defendants' application of the double recovery rule or one satisfaction rule, the plaintiff in an employment FCRA case would have to choose between pursuing and collecting statutory damages from the CRA or the employer. The FCRA does not impose such a choice on the plaintiff.

Finally, the FCRA provides that "any person" who violates its requirements "shall be liable" to the consumer for any actual damages sustained by the consumer. In the event of a willful violation, the consumer may receive statutory damages in lieu of actual damages and may also be entitled to punitive damages. In addition, for either type of violation, the consumer may recover attorney's fees. 15 U.S.C. §§ 1681 and 1681o. The FCRA does not provide that the Plaintiff may recover the damages by him sustained. Each Defendant must pay for a violation of the statute in order to achieve the deterrent effect desired by Congress. Where the wording of a statute emphasizes the amount that a Plaintiff should collect, Plaintiff should not receive more. When Congress emphases the amount a Defendant should pay, Defendant should not pay less.

## IV. CONCLUSION

Defendants' reliance upon the broad definition of "released claims" in the BGC settlement agreement is unavailing because they were not a party to the settlement agreement with BGC, the consumer reporting agency. Moreover, the covenant not to sue present in the *Skill Staff* case is not present in the case *sub judice*. Plaintiff is entitled to separate recoveries for distinct FCRA violations by different Defendants. Plaintiff did

not explicitly or implicitly release Defendants when he settled with BGC. For the foregoing reasons the Court should deny Defendants' Motion to Dismiss.

Respectfully Submitted,

**KELVIN M. THOMAS, et al**

By: _____/s/_____

Leonard Anthony Bennett, Esq.
VSB# 37523
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660 - Telephone
757-930-3662 - Fax
Email: lenbennett@clalegal.com


Susan Mary Rotkis, Esquire
Consumer Litigation Associates, P.C.
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660 - Telephone
757-930-3662 - Fax
Email: srotkis@clalegal.com

Christopher Colt North, Esquire
VSB #16955
William Leonard Downing, Esquire
The Consumer & Employee Rights
Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 5th day of May 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jessica (Perro)Haire
Fox Rothschild LLP (DC)
1030 15th Street NW
Suite 380 East
Washington, DC 20005
202-461-3100
Fax: 202-461-3102
Email: jhaire@foxrothschild.com

Colin David Dougherty
Fox Rothschild LLP
10 Sentry Parkway
Suite 200
PO Box 3001
Blue Bell, PA 19422-3001
(610) 397-3908
Fax: (610) 397-0450
Email: cdougherty@foxrothschild.com

Zachary Arbitman
Fox Rothschild LLP
10 Sentry Parkway
Suite 200
PO Box 3001
Blue Bell, PA 19422-3001
 (610) 397-3918
Fax: (610) 397-0450
Email: zarbitman@foxrothschild.com

                                                                  /s/
                                          Leonard Anthony Bennett, Esq.
                                          VSB# 37523
                                          Consumer Litigation Associates, P.C.
                                          763 J Clyde Morris Boulevard
                                          Suite 1A
                                          Newport News, VA 23601
                                          757-930-3660 - Telephone
                                          757-930-3662 - Fax
                                          Email: lenbennett@clalegal.com