

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

KELVIN M. THOMAS, <u>et al.</u>,

    Plaintiffs,

v.                       Civil Case No. 3:13cv825

FTS USA, LLC, <u>et al.</u>,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF'S OBJECTION AND MOTION TO STRIKE (ECF No. 173).  For the reasons set forth herein, the motion will be granted in part and denied in part.

### BACKGROUND

On December 11, 2013, Plaintiff Kelvin Thomas ("Thomas") filed a class action complaint on behalf of himself and all others similarly situated, alleging that defendants FTS USA, LLC ("FTS"), and Unitek Global Services, Inc. (("Unitek"); collectively, "Defendants") had violated the Fair Credit Reporting Act ("FCRA").  (Complaint ("Compl.") (ECF No. 1)).  The Complaint alleges four Counts under the FCRA.  Counts One and Two allege violations of § 1681b(b)(2)(A)(i) and (ii), respectively.  Section 1681b(b)(2)(A) provides that:

> a person may not procure a consumer report,
> or cause a consumer report to be procured,
> for employment purposes with respect to any

> consumer, unless: (i) a clear and
> conspicuous disclosure has been made in
> writing to the consumer at any time before
> the report is procured or caused to be
> procured, in a document that consists solely
> of the disclosure, that a consumer report
> may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing
> (which authorization may be made on the
> document referred to in clause (i)) the
> procurement of the report by that person.

Counts Three and Four allege violations of §§ 1681b(b)(3)(A)(i)

and (ii), respectively. Those sections require that:

> In using a consumer report for employment
> purposes, before taking any adverse action
> based in whole or in part on the report, the
> person intending to take such adverse action
> shall provide to the consumer to whom the
> report relates: (i) a copy of the report;
> and (ii) a description in writing of the
> rights of the consumer under this
> subchapter, as presented by the Bureau under
> Section 1681g(c)(3) of this title.

On June 13, 2014, the Court entered the initial Agreed

Scheduling Order. (ECF No. 26). That Order delineated two

"phases" of discovery. "Phase I discovery," which commenced

immediately following the parties' initial Rule 26 conference,

directed that the parties conduct discovery concerning "(1) the

merits of the Plaintiff's claims that the Fair Credit Reporting

Act ('FCRA') was violated with respect to him; and (2) evidence

necessary for the Parties to litigate class certification." Id.

"Phase II discovery," which would proceed only to the extent

necessary pending the Court's resolution of class certification

issues and any prior dispositive motions, would include "whether the FCRA was violated with respect to unnamed class members and factual issues bearing on whether the alleged violations of the FCRA were willful. These issues include resources and efforts devoted to FCRA compliance, audits undertaken to confirm compliance, class-wide factual discovery, and class member identities." Id.

In June 2015, the parties came before the Court to resolve Defendants' many objections to Thomas' discovery requests. At that hearing, the Court ordered Defendants to produce, by June 12, 2015, all documents concerning:

> (1) any FCRA policies that in place at either Defendant at any time during the class period;
>
> (2) any FCRA summary of rights forms used by either Defendant at any time during the applicable time period;
>
> (3) any pre- or post-adverse action notice letters used by either Defendant during the applicable time period;
>
> (4) any contracts between either Defendant and any consumer reporting agency from which either Defendant obtained consumer reports for employment purposes at any time during the applicable period;

> (5) any communications, memoranda, policies, or training materials governing either Defendant's use of background reports for employment purposes during the applicable time period;
>
> (6) any documents on which Defendants relied to demonstrate that their FCRA violations, if any, were negligent or otherwise not willful;
>
> (7) all documents supporting the claim that Thomas' class action should fail because of a lack of numerosity, a lack of predominance of questions of law and fact, a lack of typicality, a lack of adequacy, or a lack of superiority as those terms are understood in class action practice; and
>
> (8) all documents supporting Defendants' claim that the claims stated by Thomas are individual in nature and improper for treatment as a class action.

(Transcript of June 4, 2015 Hearing ("Hrg. Tr.", ECF No. 79)). The Court found Defendants' objections to be largely baseless. The Court also cautioned Defendants against discovery gamesmanship and repeatedly warned them that they would be bound by what they produced in response to those discovery requests. Id. at 13-14, 16-17, 22-23.

On January 7, 2016, the Court granted in part and denied in part Thomas' motion to certify two classes. (Order, ECF No.

4

105). The Court first certified a so-called "Impermissible Use Class," defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United States),
> who applied for an employment position with
> Defendants or any of their subsidiaries within
> the two years immediately preceding the filing
> of the Complaint in this matter on December 11,
> 2013, and as part of this application process
> were the subject of a consumer report obtained
> by Defendants, (a) where the defendants failed
> to provide a written disclosure as stated at 15
> U.S.C. § 1681b(b)(2)(A)(i) to the applicant
> that they intended to obtain a consumer report
> for employment purposes, (b) and where as a
> result the Defendants failed to obtain a proper
> written authorization as stated at 15 U.S.C. §
> 1681b(b)(2)(A)(ii) signed by the applicant
> prior to obtaining the consumer report.

The Court also certified an "Adverse Action Sub-Class," defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United States),
> who applied for an employment position with
> Defendants or any of their subsidiaries within
> the two years immediately preceding the filing
> of the Complaint in this matter on December 11,
> 2013, and as part of this application process
> were the subject of a consumer report obtained
> by Defendants, (a) where the defendants failed
> to provide a written disclosure as stated at 15
> U.S.C. § 1681b(b)(2)(A)(i) to the applicant
> that they intended to obtain a consumer report
> for employment purposes, (b) and where as a
> result the Defendants failed to obtain a proper
> written authorization as stated at 15 U.S.C. §
> 1681b(b)(2)(A)(ii) signed by the applicant
> prior to obtaining the consumer report, and (c)
> whom Defendants found ineligible for the
> position for which the applicant had applied

based on the applicant's consumer report; (d) to whom Defendants did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A)(i) at least five business days before the date the adverse employment decision is first noted in Defendants' records, (d) and to whom Defendants did not provide a written summary of Fair Credit Reporting Act rights as stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the adverse employment decision is first noted in Defendant's records.

After the certification decision, the parties commenced limited Phase II discovery. Again, Defendants resisted discovery, thereby necessitating repeated judicial intervention. See ECF No. 124 (Transcript of February 22, 2016 Hearing, overruling Defendants' objections to class notice plan); ECF No. 122 (Order overruling Defendants' objections to class notice plan); ECF No. 138 (Transcript of March 23, 2016 Hearing, addressing various disputes concerning class list, proposed protective order, and class member depositions); ECF No. 146 (Transcript of April 26, 2016 Hearing, confirming that disputes as to class list and class member depositions had been resolved). Throughout Phase II, Defendants provided discovery responses that were late, piecemeal, or in a format that was difficult or impossible for class counsel to review. See id. Phase II discovery closed on May 13, 2016.

On May 16, 2016, Defendants filed a second motion for summary judgment and a motion to decertify the classes (ECF Nos.

154, 156). On that same date, Thomas filed a motion for partial summary judgment (ECF No. 164) seeking summary judgment "on al [sic] questions other than damages." Id.

In support of their two motions and in opposition to Thomas' motion for partial summary judgment, Defendants raised several heretofore unmentioned defenses to the claims of Thomas and the class. First, Defendants contended that CSS Incorporated ("CSS"), a background check vendor engaged by Defendants, sent out pre-adverse action notices to some subclass members, in compliance with § 1681b(b)(3). Second, Defendants asserted that several class members had signed severance agreements or settlement agreements releasing all employment-related claims against Defendants. Third, Defendants argued that several class members had signed forum selection agreements in conjunction with their employment with UniTek subsidiaries that required all claims against Defendants to be pursued in Pennsylvania, and therefore that venue is improper in the Eastern District of Virginia as to those class members. Finally, Defendants contended that Thomas is an inadequate class representative and should be judicially estopped from pursuing the claims at issue because he had failed to disclose the claims made in this litigation as assets in his Chapter 13 bankruptcy proceedings, which he was statutorily required to do. (Memorandum of Law in Support of Defendants' Motion for

Decertification (ECF No. 155); Memorandum of Law in Support of Defendants' Motion for Summary Judgment (ECF No. 157); Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 166)). Accordingly, Defendants contend that they are entitled to summary judgment against the affected class members and that this action is no longer amenable to class treatment.

In support of those arguments, Defendants offer the declaration of Lauren Dudley ("Dudley"), Defendants' Senior Director of Human Resources (ECF No. 159) and numerous attached exhibits relating to the newly raised defenses. Dudley's declaration states that she is UniTek's Senior Director of Human Resources, and that, therefore, she has personal knowledge of all of the exhibits appended thereto. (ECF No. 159-1). Those exhibits are: (1) a "Statement of Work" that purports to supplement a previously produced contract between CSS and Defendants, and adverse action notices that CSS purportedly sent to subclass members before Defendants took adverse employment action against those subclass members (the "CSS documents"); (2) a "sample" selection of severance and settlement agreements, signed by some class members, that purport to release all of the signatories' claims against Defendants (the "Release and Accord and Satisfaction Documents"); (3) a "sample" selection of forum selection agreements, allegedly signed by 350 class members,

that require all disputes against Defendants to be resolved in Pennsylvania (the "Venue Documents"); and (4) lists of class members whose claims Defendants contend are affected by all of the foregoing documents.   (ECF Nos. 159-1-159-8).   Defendants offer the CSS documents and the Release and Accord and Satisfaction Documents in support of both their decertification motion and their renewed motion for summary judgment. Defendants offer the Venue Documents only in support of their decertification motion.

On May 19, 2016, after the close of Phase II discovery and after the filing of their motions for decertification and for summary judgment, Defendants served Thomas' counsel with amended disclosures under Fed. R. Civ. P. 26(a), in which Defendants for the first time disclosed Dudley as a witness with knowledge bearing on Defendants' claims.   (ECF No. 174-10).   On that same day, Defendants also produced a flash drive containing documents relating to Defendants' recently filed motions.   However, the flash drive was encrypted and unreadable by Thomas' counsel's computers.

On May 26, 2016, Thomas filed this objection and motion to strike.   First, Thomas argues that Defendants' belated disclosure of Dudley and the exhibits to her declaration violated both Fed. R. Civ. P. 26 and the Court's previous Orders.   (Memorandum in Support of Plaintiff's Objection and

Motion to Strike ("Pl. Mem.," ECF No. 174) at 13-14). Therefore, Thomas seeks to strike Dudley's declaration and all the exhibits thereto (thereby foreclosing their use in support of the pending motions), to preclude Dudley from testifying at trial, and to foreclose use of the Dudley exhibits at trial.[1] Id. Second, Thomas contends that Defendants have waived the affirmative defenses of release, accord and satisfaction, improper venue, and judicial estoppel, and therefore should be precluded from asserting those defenses in the currently pending motions or at trial. Id. at 16-18.

At oral argument, Defendants represented that they no longer will rely on the affirmative defenses of release or accord and satisfaction in support of either their decertification motion or summary judgment motion. Accordingly, Thomas' motion will be denied as moot as to those defenses, and they are not addressed further herein. Each of the remaining issues is addressed in turn.

---

[1] Thomas' motion also objected to, and sought to strike, the declaration of Collin Dougherty, Defendants' counsel, and unspecified attachments thereto. (Pl. Mem. at 1). However, at oral argument, Thomas withdrew that aspect of his motion. Therefore, to the extent that Thomas' motion concerns Dougherty's declaration, the motion will be denied as moot. Accordingly, Dougherty's declaration is not addressed further herein.

## DISCUSSION

### A. The Motion to Strike Dudley's Declaration and Exhibits Thereto

The process of determining whether to impose sanctions such as those requested by Thomas involves three steps:

> (1) determining that a violation of a discovery order or one of the Federal Rules of Civil Procedure occurred; (2) determining whether that violation was harmless and substantially justified, by reference to Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003); and (3) fitting a sanction to the violation, if one is found.

Samsung Elecs. Co., Ltd. v. Nvidia Corp., 314 F.R.D. 190, 195-96 (E.D. Va. 2016). For the reasons set forth below, the belated production of Dudley's declaration and the attached exhibits violated both the rules of discovery and the Court's previous Orders; the untimely production was neither harmless nor justified; and striking the evidence and precluding Dudley's testimony at trial are the only appropriate sanctions.

#### a. The Existence of Violations

Fed. R. Civ. P. 26(a)(1)(A)(i) requires that a party provide to its opponent, without awaiting a discovery request, the name of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). Also, a party

11

must provide a copy or description of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). These initial disclosures must be made within fourteen days of the parties' first discovery planning conference. Fed. R. Civ. P. 26(a)(1)(C). In addition, Rule 26(e)(1)(A) requires that a party must supplement or correct these initial disclosures in a timely manner, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A).

These rules obligated Defendants to disclose Dudley either within fourteen days of the parties' initial planning conference or "in a timely manner." Here, Defendants supplemented their Rule 26 disclosures to add Dudley a full week after the second phase of discovery had closed and three days after they had filed her declaration in support of their motions for summary judgment and for decertification. Although Thomas was made aware of Dudley's existence by the filing of her declaration in support of Defendants' motions, Defendants' failure to give

12

Thomas prior notice of Dudley's key role in Defendants' case utterly fails to satisfy Rule 26.[2]

Defendants contend that Dudley's disclosure was timely because she was promoted to her current position as Defendants' Senior Director of Human Resources in April 2016, and was disclosed on May 19, 2016. (Memorandum of Law in Opposition to Plaintiff's Motion to Strike ("Def. Mem. in Opp.," ECF No. 181) at 7-8). And, Defendants add, they had disclosed Dudley's predecessor, Carole Slover ("Slover") in their initial Rule 26 disclosures, and Thomas chose not to depose her. Id. The latter point is simply irrelevant to Defendants' duty to timely disclose Dudley. And, as to the first, Defendants had ample opportunity between Dudley's promotion in April and the filing of their summary judgment and decertification motions on May 16, 2016, to give Thomas notice of Dudley's existence and knowledge. Instead, Defendants chose to wait to amend their Rule 26 disclosures until after Dudley's declaration had been filed and after discovery had ended. In so doing, Defendants demonstrated that, even after numerous warnings from the Court over the past

---

[2] Given that nearly all of the documents appended to Dudley's declaration were executed or sent before her promotion to this position, the Court questions whether Dudley has sufficient personal knowledge of the events leading to the creation of those documents to satisfy Fed. R. Evid. 701, 702 and 901. However, it is not necessary to decide that issue, because Dudley's declaration is subject to exclusion on other grounds.

year, they have not yet renounced the gamesmanship in which they have engaged throughout discovery.

The disclosure of the exhibits appended to Dudley's declaration was also untimely.  In the initial Scheduling Order, dated June 13, 2014, the Court explicitly provided that Phase I discovery would include "evidence necessary for the Parties to litigate class certification."  (ECF No. 26).  And, at the hearing on June 5, 2015, the Court again ordered Defendants to produce all documents relating to class certification, specifically:

> (1) any FCRA policies that in place at either Defendant at any time during the class period, see Hrg. Tr. at 11-15;
>
> (2) any FCRA summary of rights forms used by either Defendant at any time during the applicable time period, id. at 16-17;
>
> (3) any pre- or post-adverse action notice letters used by either Defendant during the applicable time period, id. at 17-19;
>
> (4) any contracts between either Defendant and any consumer reporting agency from which either Defendant obtained consumer reports for employment purposes at any time during the applicable period, id. at 20-21;

(5) any communications, memoranda, policies, or training materials governing either Defendant's use of background reports for employment purposes during the applicable time period, id. at 21-22;

(6) any documents on which Defendants relied to demonstrate that their FCRA violations, if any, were negligent or otherwise not willful, id. at 23-24;

(7) all documents supporting the claim that Thomas' class action should fail because of a lack of numerosity, a lack of predominance of questions of law and fact, a lack of typicality, a lack of adequacy, or a lack of superiority as those terms are understood in class action practice, id. at 24; and

(8) all documents supporting Defendants' claim that the claims stated by Thomas are individual in nature and improper for treatment as a class action, id. at 28.

Now, through Dudley's declaration and the exhibits therein sponsored, Defendants seek to introduce evidence in support of their motion for summary judgment and their motion for decertification showing that:

(1) Defendants had an agreement with CSS that provided that CSS would send pre-adverse action notices on Defendants' behalf (ECF No. 159-1); and

>           (2) some class members did receive pre-adverse action
>           notices and an FCRA summary of rights in conjunction
>           with their application for employment with certain
>           UniTek subsidiaries (ECF Nos. 159-2, 159-3).

In support of their motion for decertification, Defendants also
seek to introduce evidence showing that several class members
signed forum selection agreements, such that the resolution of
the class claims will require individualized inquiry. (ECF Nos.
159-7, 159-8).

    Clearly, both the initial Scheduling Order and the more
specific directives at the hearing on June 5, 2015 required the
Defendants to produce the evidence that they now seek to
introduce through Dudley's declaration. Moreover, according to
Thomas' counsel at oral argument, to this day Defendants have
not produced these documents in a format readable by Thomas'
counsel's computers.[3]  And, even if the Court were to give
Defendants credit for producing these documents somewhere on one
of two unreadable flash drives provided to Thomas' counsel on
May 13 and May 20, 2016, the production was nearly a year late.
Now, Defendants seek summary judgment and seek to re-litigate
class certification using evidence that was available to them
and exclusively within their control long before the Court's
initial decision on that issue.

---

[3] Defendants did not rebut that contention.

Defendants argue that the production of these documents was timely because "discovery in this case closed in May 2016," and that these "class-member specific documents obviously could not be, and were not, identified until after the class members themselves were identified, in conjunction with the Court's scheduling of Phase II discovery." (Def. Mem. in Opp. at 2-3). Defendants' argument completely overlooks the fact that the Court specifically and repeatedly directed Defendants to produce all documents relevant to class certification during Phase I discovery. (See generally Hrg. Tr.; see also Scheduling Order, ECF No. 26). When Defendants attempted to limit their Phase I production to documents specific to Thomas, the Court explicitly clarified that any documents pertaining to class certification used by either Defendant, not only those related to Thomas, were required to be produced by June 12, 2015. See, e.g., Hrg. Tr. at 17, 19.

Defendants' argument also fails for the same reasons set forth in the recent opinion in Milbourne v. JRK Residential Am., 2016 WL 1071564, at *9-10 (E.D. Va. Mar. 15, 2016). In that case, the defendant argued that it could not have raised the issue that several class members had signed binding arbitration agreements until after the Court had certified a class because the named plaintiff had not signed such an agreement, and the absent class members had not yet been identified. Id. at *9.

17

The Court held that, even though it lacked in personem jurisdiction over absent class members before class certification, "[the defendant's] assertion or mention of its right at that point would have fundamentally changed the course of the litigation, ensured a more expedient and efficient resolution of the trial, and prevented [the defendant's] improper gamesmanship." Id. at *9 (quoting In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig., 790 F.3d 1112, 1118 (10th Cir. 2015) (emphasis in original)). The same is true here.

For the foregoing reasons, Defendants' failure to disclose Dudley and the documents appended to her declaration prior to May 2016 constitutes a violation of Rule 26 and of the Court's Orders of June 2014 and June 2015.

### b. Harmlessness and Substantial Justification

If a party fails to identify witnesses or documents as required by Rules 26(a) and 26(e) or a court order, that party is subject to sanctions pursuant to Fed. R. Civ. P. 37(c)(1). That rule provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on

motion and after giving an opportunity to be heard:

(A) May order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) May inform the jury of the party's failure; and

(C) May impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) provides the following by way of alternate or additional sanctions:

(i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) Striking pleadings in whole or in part;

(iv) Staying further proceedings until the order is obeyed;

(v) Dismissing the action or proceeding in whole or in part;

(vi) Rendering a default judgment against the disobedient party.

The basic purpose of these rules is to prevent "surprise and prejudice to the opposing party." Southern States, 318 F.3d at 596. It is not necessary that the nondisclosure be in "bad

faith or callous disregard of the discovery rules" for the evidence to be excluded. Id. The burden is on the nondisclosing party to show harmlessness and justification. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

When assessing whether the nondisclosure was substantially justified or harmless, the court, in its broad discretion, should consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Southern States, 318 F.3d at 597. However, the court need not consider all of the factors in reaching a conclusion on harmlessness and justification. See Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2011).

Applying the Southern States factors to this case, it is clear that Defendants' failure to disclose was neither harmless nor substantially justified. First, Thomas was certainly surprised by Dudley's declaration and the attached documents, revealed only after the close of discovery, several months after the Court's decision on class certification, and nearly a year after the Court explicitly ordered Defendants to produce all of the documents relevant to the Rule 23 analysis.

Moreover, not only did Defendants fail to disclose this evidence after having been ordered to do so, but Dudley's declaration and the evidence appended thereto affirmatively contradict Defendants' prior discovery responses.  For example, when examined about the existence of any documents or other evidence to support the assertion that any third-party vendor provided any pre-adverse action notices on Defendants' behalf, Defendants' Rule 30(b)(6) representative, Steven Conlin ("Conlin") testified:

> Q. Now other than this document [from Backgroundchecks.com], what basis does UniTek—and now I'm asking the company under the company under Rule 36 again.  I mean generally these questions are--are 30(b)(6) questions, but I'm--I really want to emphasize or--or bold that--this 30(b)(6) series.  Other than this document, what basis did UniTek have to believe that the background check companies that we have discussed was sending the pre-adverse action notice on [UniTek's] behalf?
>
> A. Other than this document, there was no other reference.

(ECF No. 165-1, Deposition of Steven Conlin ("Conlin Dep.") at 123:8-18).[4]  Conlin's testimony directly contradicts the evidence

---

[4] Conlin's deposition provides an independent reason to exclude Dudley's declaration and the evidence Defendants now offer that directly contradicts Conlin's testimony.  "[I]t is well settled in the Fourth Circuit that as a general proposition, a party may not submit an affidavit or declaration at the summary judgment stage contradicting its earlier deposition testimony," including corporate testimony taken pursuant to Rule 30(b)(6).  Caraustar Indus., Inc. v. N. Ga. Converting, Inc., 2006 WL 3751453, at *6

that Defendants now seek to offer regarding pre-adverse action notices sent by CSS. It is no wonder that Thomas' counsel was surprised. Similarly, in response to Thomas' Request for Production requesting a "copy of the form pre-adverse action notice/letter (FCRA § 1681b) in force at either Defendant at either time during the applicable time period," Defendants responded that they "ha[d] no documents responsive to this Request." (ECF No. 174-2 at 2). Additionally, when asked whether anyone else in the company dealt with background check screening or would be familiar with UniTek's agreements with various background check vendors, Conlin stated that he "was the only guy that did this particular position in the entire company." (Conlin Dep. at 109).

Thus, based on the evidence Defendants had produced as of June 12, 2015 and the subsequent testimony of Defendants' Rule 30(b)(6) designee, Thomas had no reason to know of Dudley or to depose her predecessor, much less suspect the existence of any of the exhibits appended to Dudley's declaration. Defendants'

---

(W.D.N.C. Dec. 19, 2006) (citing Rohrbourgh v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990); Wiley v. United Parcel Serv., Inc., 102 F. Supp. 2d 643, 653 (M.D.N.C. 1999)). Because Defendants have made no showing that they were unaware of the importance of their Senior Director of Human Resources to their defense or that the accompanying exhibits were unavailable at the time of the Rule 30(b)(6) depositions, they may not now take "legal and factual positions that vary materially [from] those taken by their corporate representative[]." Rainey v. Am. Forest & Paper Assoc., Inc., 26 F. Supp. 2d 82, 95 (D.D.C. 1998).

failure to identify Dudley or to produce any of the documents appended to her declaration, particularly in light of their previous representations in discovery, not only lulled Thomas into believing that the record as to class certification was complete, but also deprived him of the opportunity to conduct discovery in response to Defendants' new evidence. Likewise, Thomas had no reason to develop evidence in response to Defendants' motion for summary judgment.

Only when Defendants filed the currently pending motions did it become apparent that Dudley and the exhibits appended to her declaration would be critical to Thomas' ability to prepare for trial and to oppose Defendants' recent motions. Defendants cannot represent to Thomas and the Court that they have produced all the requested or ordered documents and then later, after the close of discovery and the filing of their dispositive motions, reverse themselves.

Defendants do not specifically address the Southern States factors in their brief, but appear to contend that Thomas cannot claim surprise because the mere existence of Phase II discovery should have alerted him to the possibility of new defenses pertaining to previously unidentified absent class members. (Def. Mem. in Opp. at 2-4). This argument simply misunderstands the respective purposes of the phases of discovery.

As explained above, Defendants were ordered to produce all documents relevant to class certification during Phase I discovery. When it became clear that Defendants had either misunderstood or disobeyed the Court's initial Scheduling Order, the Court, at the June 2015 hearing, specifically ordered Defendants to produce documents that would have disclosed the information they now seek to introduce through Dudley's declaration. Also, the Court specifically warned Defendants that they would be bound by the documents they produced as to class certification in June 2015. (Hrg. Tr. at 12, 17). Therefore, there is absolutely no basis for Defendants to have believed that they had no obligation to disclose this evidence during Phase I discovery. In any event, the argument is a hollow one, because Defendants did not disclose Dudley's existence or relevance or produce the exhibits until after discovery was closed.

Second, this case has been certified as a class action and discovered and prepared for trial as a class action. The Final Pretrial Conference is set for July 13, 2016 and the trial is set for July 18, 2016. It is too late to cure the surprise, absent a continuance of the trial to allow class counsel to prepare to confront multiple entirely new theories at trial and to represent a potentially substantially different class. Class counsel would also doubtless need to depose Dudley and gather

information as to the origins and validity of the documents attached to her declaration, and would need to develop a responsive case on new theories. Moreover, with trial rapidly approaching, Defendants still have not provided class counsel with readable and reviewable versions of the relevant documents. Defendants have also thus far filed only a small "sample" of the documents with the Court, and have provided lists of class members whom they claim are affected by the proffered documents (ECF Nos. 159-3, 159-6, 159-8); but, neither class counsel nor the Court can evaluate the validity of Defendants' claims concerning the composition of the class or the substance of the motion for summary judgment without the documents having been produced in their entirety. In sum, there is no possibility of cure without a continuance.

Third, a continuance, of course, would significantly disrupt the scheduled trial, at which numerous witnesses, from several parts of the country, will appear. Even if additional discovery were not necessary, the introduction of new theories as to willfulness and the maintenance of this suit as a class action would substantially change the character of the case and render obsolete much of the parties' trial preparation. It is also worth emphasizing that it is not only the rights of the parties currently before the Court that are at stake; thousands of unnamed class members will also be affected by unforeseen

changes in the course of this litigation that would be necessary if Dudley's declaration and exhibits were to be allowed.

Moreover, summary judgment and decertification briefing is already complete; motions in limine have already been filed; and the final pretrial conference is less than a month away.   This case has been pending for nearly three years, and the Court has previously extended discovery deadlines to compensate for Defendants' recalcitrant discovery conduct.   Allowing this evidence and continuing the trial would only serve to draw the litigation out further.   Additionally, because this evidence has the potential to substantially impact the composition of the class, and the parties have already approved and mailed notice of this action to the class, it would be necessary to alert the affected class members and potentially resend all class notices, causing further delay, expense, and consumer confusion.

Fourth, as emphasized above, Dudley's declaration and the evidence attached thereto have the potential to not only shape the progression of the trial, but also shape the composition of the class.   Defendants clearly recognize this, because they offer Dudley's declaration in support of both their motion for summary judgment and their motion for decertification. Accordingly, the importance of the evidence weighs against a finding that Defendants' violations were harmless.

Finally, the explanations offered by Defendants are entirely unsatisfactory. Defendants essentially contend that they did not disclose Dudley or the exhibits sooner because they were not required to do so. Specifically, Defendants argue that their disclosures were satisfactory because: (1) they disclosed Dudley's predecessor, whom Thomas declined to depose; and (2) the existence of Phase II discovery constituted free rein to relitigate class certification. For the reasons set forth in part A.1.a above, those arguments are unavailing. Therefore, Defendants have failed to justify their violations.

### c. The Appropriate Sanction

Having determined that a violation occurred, and that the violation was neither harmless nor substantially justified, it is necessary to determine what sanction to impose. "Although Fed. R. Civ. P. 37(c)(1) is often read as an automatic preclusion sanction against a noncomplying party that prevents that party from offering the nondisclosed evidence in support of a motion or at trial, the second sentence of the rule permits 'other appropriate sanctions' in addition to or in lieu of the automatic preclusion." Samsung, 314 F.R.D. at 200 (citing Rambus, Inc. v. Infineon Techs. AG, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001)). District courts enjoy broad discretion to select an appropriate remedy in light of the totality of the circumstances. Southern States, 318 F.3d at 593.

27

In applying that discretion, courts within the Fourth Circuit consider: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that non-compliance caused the adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions would have been effective." Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc., 61 F. App'x 822, 830 (4th Cir. 2003) (quoting Anderson v. Found. For Advancement, Educ. And Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)). Applying those factors to the circumstances of this case, the Court finds that the appropriate remedy is to: (1) exclude Dudley's declaration and the evidence attached thereto from consideration in deciding Defendants' decertification motion and summary judgment motion; (2) preclude Dudley from testifying at trial; and (3) preclude Defendants from introducing the CSS documents at trial.

### i. Bad Faith

Although the Court does not lightly infer bad faith, Defendants here have persisted in a pattern of obfuscation and gamesmanship throughout discovery in this case. Throughout discovery, they have objected to reasonable requests; failed to meet deadlines; refused to cooperate with class counsel; failed to follow Court orders; and offered piecemeal discovery responses, sometimes formatted in a way that made documents

difficult or impossible for Thomas' counsel to review in an efficient manner.

For example, the June 2015 hearing became necessary only because Defendants had refused to comply with Thomas' most basic discovery requests. At that hearing, when Defendants could offer no cogent explanation for any of their numerous boilerplate objections, the Court gave Defendants explicit instructions to produce all documents relating to the issues that Defendants now attempt to relitigate on the eve of trial. As another example, during Phase II discovery, Defendants first produced class member files in a format that required Thomas' counsel to review each page of each document as a separate .pdf file, ultimately forcing the Court to specifically direct Defendants to produce the files in a usable format. (ECF No. 138, Transcript of March 23, 2016 Hearing, at 4).

Moreover, when the Court specifically asked Defendants at the February 1, 2016 hearing what discovery they wished to conduct in Phase II, Defendants responded:

> Deposition of the plaintiff has not been taken, and then there's two sub-classes Your Honor is aware of, as well as some different processes that happen depending on the specific subsidiary. Some—background checks are common; it's not used by every subsidiary. So there would be depositions of plaintiffs, from other class members, from other subsidiaries of UniTek other than FTS.

(ECF No. 110 at 9:25-10:7). That response in no way gave notice of the broad scope of the evidence, or the new theories of defense, that Defendants now proffer through Dudley's declaration and its exhibits. Defendants then provided class counsel with two unreadable flash drives, the first on the last day of Phase II discovery, three days before the summary judgment and decertification motions were due, and the second (along with their amended Rule 26(a) disclosures) a week after discovery had closed.

In sum, throughout both phases of discovery, Defendants' obfuscatory conduct has forced Thomas to file multiple discovery motions, which have in turn required repeated intervention by the Court. At best, this pattern of behavior suggests a significant misapprehension of the rules of discovery and the Court's orders. Given this course of conduct, and Defendants' failure to heed the Court's repeated warnings, the Court cannot help but conclude that Defendants acted in bad faith in failing to produce Dudley's declaration or its exhibits in a timely fashion. Accordingly, this factor weighs in favor of exclusion of that evidence.

### ii. Prejudice

Forcing Thomas to proceed to trial without time to adequately analyze, depose, and supplement on the previously undisclosed information would constitute significant prejudice.

30

Not only would Thomas likely need to depose Dudley and possibly her predecessor to determine the validity of several hundred heretofore unmentioned contracts between Defendants and class members, but Thomas would also likely need to conduct discovery as to CSS, whose role in Defendants' latest motions was completely belied by Defendants' previous productions and 30(b)(6) testimony. Thomas has shaped his strategy for class certification and trial around Defendants' representations, many of which Defendants have now completely reversed. Moreover, had Dudley and the documents been timely identified, Thomas could have conducted discovery on the issues now presented by the Defendants in their quest for summary judgment. Also, Thomas could have developed responsive evidence respecting those issues. The Defendants' decision to delay their document production and amended Rule 26 disclosures foreclosed those options to Thomas. Finally, by forcing repeated judicial intervention that would have been unnecessary had Defendants followed the Federal Rules governing discovery or the Court's orders, and now by asking to relitigate class certification issues that should properly have been raised much earlier, Defendants have imposed an unwarranted burden on the limited resources of the Court. This factor warrants, at a minimum, the sanction of exclusion.

### iii. Need for Deterrence

Sanctions must be "sufficient not only to remedy the harm caused, but to provide a sufficient deterrent such that present and future parties will be forewarned from acting similarly." Beach Mart, Inc. v. L&L Wings, Inc., 302 F.R.D. 396, 414 (E.D.N.C. 2014). As the Court recently noted, "deterrence is...necessary in the broader sense because nondisclosure, left untreated, gives rise to nasty snarls that eat up the parties' time, the Court's time, and the jury's time, in contravention of the rule that cases should be resolved in a just, speedy, and inexpensive manner. Fed. R. Civ. P. 1." Samsung, 314 F.R.D. at 201. The violations here presented, which represent a continuance of Defendants' pattern of unnecessarily complicating the discovery process throughout this litigation, evince a need to deter both willful nondisclosure and gamesmanship. The Court finds that exclusion of Dudley's declaration and the exhibits attached thereto is both necessary and appropriate to discourage defendants, both in this action and in the future, from disregarding the Court's orders and the Rules governing discovery.

### iv. Less Drastic Sanctions

Considering the first three factors yields the initial conclusion that the appropriate sanction is to grant Thomas' motion, strike the Dudley declaration and its exhibits, and to

preclude any testimony or evidence based on the topics therein. However, before taking an action of that sort, it is necessary to assess whether a less drastic sanction would suffice. The payment of Thomas' fees and expenses and allowing the evidence subject to a jury instruction are alternate sanctions. Fed. R. Civ. P. 37(c)(1)(B) and (C). Neither would cure the prejudice faced by Thomas or appropriately sanction Defendants for their utterly improper behavior. The alternate sanctions offered by Fed. R. Civ. P. 37(b)(2)(A)(1)(i), (iii), (iv) and (v) do fit this situation. The sanction of default judgment in the case is too harsh. Fed. R. Civ. P. (2)(A)(vi).

The sanction presented by Fed. R. Civ. P. (2)(A)(ii) parallels the sanction of Fed. R. Civ. P. 37(c)(1), preclusion of the improperly withheld, untimely evidence, namely, Dudley's declaration and its exhibits. Accordingly, and for the reasons set forth herein, the Court finds that that is the appropriate sanction.

## B. Waiver of the Defenses of Improper Venue and Judicial Estoppel

In their second motion for summary judgment and motion for decertification, Defendants raised four new affirmative defenses for the first time: release; accord and satisfaction; improper venue; and judicial estoppel. Thomas contends that Defendants have waived these defenses by failing to raise them previously.

As noted above, Defendants represented at oral argument that they no longer seek to present the affirmative defenses of release and accord and satisfaction; therefore, it is not necessary to determine whether those defenses have been waived.

Absent unfair surprise or prejudice, some courts have allowed a party to raise an affirmative defense for the first time as late as trial, but only where the evidence supporting the defense is introduced without objection. See 5 Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1238 (3d ed. 2011) (listing and discussing cases). More importantly for this case, the Fourth Circuit has held that, "if a plaintiff receives notice of an affirmative defense by some means other than the pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" Grunley Walsh U.S., LLC v. Raap, 386 F. App'x 455, 459 (4th Cir. 2010) (quoting Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989)). This case presents quite different facts than those that led to the holding in Raap. Nonetheless, Raap teaches that the failure to timely amend the Answer to add an affirmative defense does not, standing alone, establish prejudice. Rather, the waiver issue must be assessed on a case-by-case basis.[5]

---

[5] The proper procedure is to move for leave to amend the Answer to add an affirmative defense, if one is discovered after the

### 1. Defendants have Waived the Affirmative Defense of Improper Venue.

Improper venue is an affirmative defense that must be raised before or simultaneously with the filing of a responsive pleading. Leonard v. Mylan, Inc., 718 F. Supp. 2d 741, 744 (S.D.W. Va. 2010); Fed. R. Civ. P. 12(b)(3).[6] The purpose of that rule is to give the opposing party notice of the affirmative defense and a chance to rebut it. Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 350 (1971). Accordingly, failure to assert any affirmative defense, including venue, results in a binding waiver if allowing the defense would result in unfair surprise or prejudice. See Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 270 (4th Cir. 2003); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) ("Although it is indisputably the general rule that a party's failure to raise an affirmative defense in the appropriate pleading results in waiver...there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's

---

Answer has been filed and during the course of discovery. That, of course, affords the opposing party a chance to develop any responses during discovery and an opportunity to be heard. Hence, it is only rarely that the untimely assertion of an affirmative defense will not be prejudicial.

[6] Improper venue may be raised in the Answer or by a motion under Fed. R. Civ. P. 12(b).

affirmative defense is not waived when it is first raised in a pre-trial dispositive motion.").

Although Defendants pleaded twenty defenses in their Answer, improper venue does not appear among those enumerated defenses.    (ECF  No.  18).    Nor  does  the  issue  appear  in Defendants' Motion to Dismiss.    (ECF  No.  11).    Nor  did Defendants raise the issue in their lengthy opposition to Thomas' motion for class certification.    (ECF No. 79).   Even when the Court pressed Defendants at the February 22, 2016 telephonic hearing to specify the issues that warranted their decertification motion, Defendants did not even mention the issue of forum selection clauses.    (ECF No. 126, Transcript of Feb. 22, 2016 Hearing at 12-14).

Now, on the eve of trial, after discovery has closed and after class notices have already been sent out, Defendants seek summary judgment and seek to dismantle the Court's class certification decision by using information that they have possessed for years.   As Thomas points out, he has not had the opportunity to depose Dudley or to engage in any other discovery on the topic of forum selection clauses.   This case was filed nearly three years ago, and Defendants cannot point to any filing or discovery request or response from which Thomas should have received notice of the defense of improper venue before May 16, 2016.   This appears to have been an intentional, tactical

decision.    Allowing  Defendants  to  raise  that  defense  now  would
cause unfair surprise and prejudice to Thomas.

Defendants  contend  that  there  is  no  prejudice  as  to  the
affirmative defense of improper venue because they specifically
denied  that  venue  was  proper  in  their  Answer.    (Def.  Mem.  in
Opp.  at  4).    That  is  simply  false.    Defendants  do  not  mention
the  issue  of  venue  in  the  twenty  "defenses"  pled  in  their
Answer.    Moreover,  Defendants'  Answer  does  not  specifically  deny
that  venue  is  proper;  it  simply  denies  Thomas'  specific  factual
allegations  that  "[t]he  job  application  process  alleged  herein
occurred  in  Richmond,"  that  "[t]he  relevant  employment  records
are  maintained  in  Richmond,"  and  that  "[t]he  witnesses  work  in
Richmond."    (ECF  No.  18  at  3).    However,  Defendants  admitted
that  "Defendant  FTS  operates  in  the  Commonwealth  of  Virginia."
Id.  at  4.    Those  statements  fail  to  provide  even  the  slightest
hint  that  Defendants  intended  to  argue  that  venue  was  improper
because  some  class  members  agreed  to  litigate  their  claims  in
Pennsylvania.

Second,  Defendants  contend  that  the  defense  is  timely
because  "affirmative  defenses  raised  for  the  first  time  in
summary  judgment  motions  will  provide  the  requisite  notice."
(Def.  Mem.  in  Opp.  at  5).    That  can  be  true,  but  is  not
categorically  so.    See,  e.g.,  S.  Wallace  Edward  &  Sons,  Inc.  v.
Cincinnati  Ins.  Co.,  353  F.3d  367,  373  (4th  Cir.  2003)

(upholding district court's finding that the defendant had waived the affirmative defense of statute of limitations and therefore could not raise it in support of motion for summary judgment). Not once in the time that this case has been pending did the Defendants raise the issue of venue. Defendants do not, and could not, contend that this evidence is newly discovered; they simply chose not to reveal it until now. Under these circumstances, that decision has caused prejudice and surprise to Thomas.

Furthermore, the fact that venue was not raised previously has led Thomas to the belief that this case would be tried in this district and it is set for trial here. A move to Pennsylvania would mean that the trial would be further delayed. That is prejudice where, as here, the case is ready to go to trial.

Finally, Defendants argue that, "because Phase II discovery occurred post-certification and contemporaneously with the actual identification of the class members, Plaintiffs [sic] suggestion that the Defendants should have—or even could have—utilized, reviewed, and/or produced any of these documents at an earlier date is preposterous." (Def. Mem. in Opp. at 3). This argument too is unavailing. It is well settled that the applicability of class-member specific affirmative defenses is an integral and ubiquitous facet of the Rule 23 inquiry. See,

e.g., Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (noting that where "'affirmative defenses (such as...the statute of limitations) may depend on facts peculiar to each plaintiff's case,' class certification is erroneous") (internal citation omitted); Brown v. Electrolux Home Prods., Inc., 2016 WL 1085517 (11th Cir. Mar. 21, 2016) (observing that affirmative defenses may defeat predominance where they "apply to the vast majority of class members and raise complex, individual questions"); Romig v. Pella Corp., 2016 WL 3125472 (D.S.C. June 3, 2016) (noting that individualized affirmative defenses are relevant to typicality, predominance, and superiority).  It necessarily follows that affirmative defenses can be, and are, raised at the class certification stage, even where they do not apply to the named plaintiff.  Moreover, although these defenses become applicable only after class certification, in the sense that the Court lacks jurisdiction over absent class members before the certification of the class, Defendants were aware of the potential class since the class action Complaint was filed in December of 2013.  It is simply inconceivable that Defendants were entirely unaware of these issues before Phase II discovery.

The Court's ongoing duty to monitor the feasibility of the class action does not give Defendants carte blanche to withhold relevant evidence and waste class counsel's and the Court's

resources re-litigating class certification based only on the piecemeal production of evidence that Defendants possessed long before the Court's initial decision on the matter. Accordingly, Defendants have waived the affirmative defense of improper venue.

### 2. Defendants Have Not Waived the Affirmative Defense of Judicial Estoppel.

Defendants also failed to plead the affirmative defense of judicial estoppel in their Answer, and failed to raise the issue in their opposition to Thomas' class certification motion.[7] However, because Thomas had notice of this issue long before Defendants filed the currently pending motions, Thomas can claim neither prejudice nor surprise as a result of Defendants' failure to plead that defense. Moreover, because "the interests served by the doctrine concern the judicial process more than fairness to the opposing party," it is appropriate for the Court to address the issue on the merits. Cathcart v. Flagstar Corp., 155 F.3d 558 (Table), 1998 WL 390834, at *8 n.2 (4th Cir. 1998).

Thomas received notice of this defense no later than June 13, 2014, the date that Defendants first requested information concerning Thomas' previous bankruptcies. (ECF No. 158-11). At that time, rather than respond to the request, Thomas objected that:

---

[7] Pursuant to Fed. R. Civ. P. 8(c), judicial estoppel is an affirmative defense that should be raised in the Answer.

> any bankruptcies that Plaintiff filed before
> the facts arose which give rise to
> Plaintiff's Complaint are neither relevant
> nor calculated to lead to the discovery of
> admissible evidence. Instead, the inquiry
> could only be pursued to harass and
> embarrass Plaintiff. If Plaintiff filed for
> bankruptcy after this cause of action arose,
> Plaintiff will respond relating to that
> bankruptcy.

Id. Thomas initially filed for Chapter 13 bankruptcy in 2009, and his debts were ultimately discharged in May 2014. (ECF No. 158-10, Bankruptcy Docket Sheet). Thus, at the time of Defendants' initial request, Thomas was well aware of the bankruptcy proceedings, and he and his counsel did not reveal them. Therefore, any prejudice that Thomas now suffers is a direct result of his failure to investigate the matter and provide a full and timely response to Defendants' request in 2014.

Furthermore, after discovering Thomas' bankruptcy filing during Phase II discovery (largely by chance, due to Thomas' prior obfuscation of the issue), Defendants questioned Thomas extensively about the chronology of his bankruptcy proceedings at his deposition on March 22, 2016. (ECF No. 158-3). Those questions put Thomas on notice of a judicial estoppel defense as well. See, e.g., Cook v. St. John Health, 2013 WL 2338376, at *6 (E.D. Mich. May 29, 2013) (holding that the plaintiff was not prejudiced by the defendants' failure to plead judicial estoppel

because questions concerning her bankruptcy at her deposition put her on notice of the defense); Thompson v. Davidson Transit Org., 725 F. Supp. 2d 701, 710 (M.D. Tenn. 2010) (same). Therefore, it seems obvious that Thomas should have been aware of the judicial estoppel issue well before Defendants filed the motion for summary judgment or decertification.

Additionally, the Fourth Circuit has held that "judicial estoppel differs from other estoppel defenses in that its purpose, first and foremost, is to 'protect the essential integrity of the judicial process,' rather than the interests of the opposing party." Cathcart, 1998 WL 390834, at *8 n.2 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). For that reason, the Fourth Circuit has been fairly forgiving of parties' failure to plead judicial estoppel, noting that it may be appropriate for courts to raise the issue sua sponte and even considering the argument on appeal when it was not raised in the court below. Id.

For the foregoing reasons, Defendants have not waived the affirmative defense of judicial estoppel, and Thomas' motion to strike will be denied as to that defense.

## CONCLUSION

For the foregoing reasons, PLAINTIFF'S OBJECTION AND MOTION TO STRIKE will be granted in part and denied in part as follows: (1) the motion will be denied as moot as to the Declaration of

42

Colin Dougherty (ECF No. 158); (2) the motion will be granted as to the Declaration of Lauren Dudley and attachments thereto (ECF No. 159); (3) the motion will be granted as to the affirmative defense of venue; (4) the motion will be denied as moot as to the affirmative defenses of release and accord and satisfaction; and (5) the motion will be denied as to the affirmative defense of judicial estoppel.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 24, 2016