

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

KELVIN M. THOMAS, et al.,

      Plaintiffs,

v.                           Civil Case No. 3:13-cv-825

FTS USA, LLC, et al.,

      Defendants.

### MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 164). For the reasons set forth herein, the motion will be granted in part and denied in part.

### BACKGROUND

On December 11, 2013, Plaintiff Kelvin Thomas ("Thomas") filed a class action complaint on behalf of himself and all others similarly situated, alleging that defendant FTS USA, LLC ("FTS"), a subsidiary of Unitek Global Services, Inc. (("Unitek"); collectively, "Defendants") had violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). (Complaint ("Compl.") (ECF No. 1)). Counts One and Two of the Complaint allege violations of § 1681b(b)(2)(A)(i) and (ii), respectively. Section 1681b(b)(2)(A) provides that:

> a person may not procure a consumer report,
> or cause a consumer report to be procured,
> for employment purposes with respect to any
> consumer, unless: (i) a clear and
> conspicuous disclosure has been made in
> writing to the consumer at any time before
> the report is procured or caused to be
> procured, in a document that consists solely
> of the disclosure, that a consumer report
> may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing
> (which authorization may be made on the
> document referred to in clause (i)) the
> procurement of the report by that person.

15 U.S.C. § 1681b(b)(2).

Counts Three and Four allege violations of §§ 1681b(b)(3)(A)(i) and (ii), respectively. Those sections require that:

> In using a consumer report for employment
> purposes, before taking any adverse action
> based in whole or in part on the report, the
> person intending to take such adverse action
> shall provide to the consumer to whom the
> report relates: (i) a copy of the report;
> and (ii) a description in writing of the
> rights of the consumer under this
> subchapter, as presented by the Bureau under
> Section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3).

On January 7, 2016, the Court granted Thomas' motion to certify two classes based on the allegations in the Complaint (ECF No. 105). The Court first certified a so-called "Impermissible Use Class," defined as follows:

2

All natural persons residing in the United
States (including all territories and other
political subdivisions of the United
States), who applied for an employment
position with Defendants or any of their
subsidiaries within the two years
immediately preceding the filing of the
Complaint in this matter on December 11,
2013, and as part of this application
process were the subject of a consumer
report obtained by Defendants, (a) where the
defendants failed to provide a written
disclosure as stated at 15 U.S.C. §
1681b(b)(2)(A)(i) to the applicant that they
intended to obtain a consumer report for
employment purposes, (b) and where as a
result the Defendants failed to obtain a
proper written authorization as stated at 15
U.S.C. § 1681b(b)(2)(A)(ii) signed by the
applicant prior to obtaining the consumer
report.

(ECF No. 105).

The Court also certified an "Adverse Action Sub-Class,"
defined as follows:

All natural persons residing in the United
States (including all territories and other
political subdivisions of the United
States), who applied for an employment
position with Defendants or any of their
subsidiaries within the two years
immediately preceding the filing of the
Complaint in this matter on December 11,
2013, and as part of this application
process were the subject of a consumer
report obtained by Defendants, (a) where the
defendants failed to provide a written
disclosure as stated at 15 U.S.C. §
1681b(b)(2)(A)(i) to the applicant that they
intended to obtain a consumer report for
employment purposes, (b) and where as a
result the Defendants failed to obtain a
proper written authorization as stated at 15
U.S.C. § 1681b(b)(2)(A)(ii) signed by the

3

applicant prior to obtaining the consumer report, and (c) whom Defendants found ineligible for the position for which the applicant had applied based on the applicant's consumer report; (d) to whom Defendants did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A)(i) at least five business days before the date the adverse employment decision is first noted in Defendants' records, (d) and to whom Defendants did not provide a written summary of Fair Credit Reporting Act rights as stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the adverse employment decision is first noted in Defendant's records.

Id.

After the Court certified the classes, the parties conducted limited post-certification discovery. The Court granted leave for Defendants to file a second motion for summary judgment "limited to the following two issues: a. Class Representative Kelvin Thomas' understanding of the Employment Release Form that he signed at the time he applied for employment with FTS USA, LLC; and b. Plaintiffs' damages." (ECF No. 124).[1]

After the close of discovery, Thomas filed a motion for summary judgment, in which he seeks summary judgment "on al [sic] questions other than damages." (ECF No. 164). That is, Thomas contends that he is entitled to summary judgment on the

---

[1] DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (ECF No. 156) has been denied by separate Memorandum Opinion and Order.

issue of liability on all counts and on the issue of willfulness.   (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl. Mem.," ECF No. 165)).

## A. Factual Background

In September 2009, Thomas obtained a job with Cableview Communications ("Cableview"), which was purchased by FTS in the fall of 2011.   (Deposition of Kelvin Thomas ("Thomas Dep.," ECF No. 165-2) at 12).   Defendant UniTek is the parent company of FTS.   (ECF No. 38 at 6, ¶ 2).   In order to continue his employment with FTS, on January 17, 2012, Thomas signed an "Employment Release Statement," which provides, in pertinent part:

> Prior to and for the duration of my employment with FTS USA, LLC (the "Company"), I understand that investigative background inquiries are going to be made on myself [sic].   I understand that the Company will be requesting information from various Federal, State, Local and other agencies which maintain records concerning my past activities relating to my driving history, credit, criminal, civil, and other experiences.   These reports may also include inquiries regarding my educational history and past work experience and performance including reasons for termination of employment.
>
> I authorize, without reservation, any party or agency contacted by the Company or its agents to furnish any of the above mentioned information or any other information requested.

5

(ECF No. 92 Ex. 1).   According to Steven Conlin ("Conlin"), Defendants' corporate designee under Fed. R. Civ. P. 30(b)(6), the Employment Release Statement that Thomas received was UniTek's standard disclosure form, which was provided to all prospective employees during the relevant class period. (Deposition of Steven Conlin ("Conlin Dep.," ECF No. 165-1) at 58).

After its acquisition of Cableview, FTS required every Cableview employee who wished to continue employment with FTS to undergo a background check.   (ECF No. 38 at 3, ¶¶ 7-10). UniTek's internal hiring policies provided that "[a] pending employee may not be eligible for hire" if the employee has been charged with or convicted of certain felonies, misdemeanors, driving offenses, or other "unacceptable" crimes.   Id. at ¶¶ 11-12.

On or about January 20, 2012, UniTek, which performed "all consumer report-related functions on behalf of itself and...FTS," ordered a background check on Thomas from Backgroundchecks.com ("BGC"), a consumer reporting agency.   (ECF No. 99, Ex. D).   BGC performed all background checks for consumers who applied for employment with FTS, but UniTek also engaged various other consumer reporting agencies to perform background checks on its other subsidiaries' potential employees.   (Conlin Dep. at 73).

6

BGC's initial report on Thomas contained numerous felony convictions, including convictions for distribution of marijuana, money laundering, statutory rape, and carnal knowledge of a juvenile, all of which were incorrectly attributed to Thomas. (ECF No. 38, Ex. C). The report also revealed that Thomas' driving record contained several moving violations, as well as a report of a 2011 accident in which Thomas was at fault. Id. Thomas was not afforded an opportunity to review or address the contents of that report.

On March 12, 2012, Thomas' supervisor informed Thomas that, as a result of his driving record, he was ineligible for the position for which he had applied. (ECF No. 38, Exs. E, F; Conlin Dep. at 136). On that same date, an FTS representative provided Thomas with an edited copy of the BGC background check, which included some of the erroneous convictions. (Thomas Dep. at 21). Thomas then informed Defendants that his background check was inaccurate. Id. Thereafter, BGC provided an updated background check that reflected no criminal charges, but confirmed that Thomas' driving record was accurate. (ECF No. 38, Ex. D).

It is undisputed that Thomas was never given a copy of the background check before March 12, 2012, and that Defendants did not ever provide Thomas with a summary of his rights under the FCRA. In fact, Defendants never provided either of these

7

documents to any current or potential employees because, according to Defendants, they were under the impression that their third-party vendors would provide the required notices. (Conlin Dep. at 121-122). Defendants claim to have held that belief notwithstanding the absence of any provisions to that effect in the contracts between Defendants and their background check vendors. (ECF Nos. 165-9, 165-11).

DISCUSSION

### A. Legal Standard

Summary judgment is proper when there is no genuine issue as to any material fact in the case such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Once the moving party properly files and supports its motion for summary judgment, the opposing party must show that a genuine issue of fact exists. See Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). A genuine issue of material fact only exists when the opposing party has presented sufficient evidence upon which a reasonable jury could return a verdict in its favor. Id. This means that "summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a 'showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" BM v. Chesterfield County School Dist., 2010 WL 145661, at *1 (E.D. Va. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). In considering motions for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party. Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1985).

### B. Plaintiffs are Entitled to Summary Judgment that the Employment Release Statement Violates 15 U.S.C. § 1681b(b)(2)(A) (Counts One and Two)

In support of the motion for summary judgment on whether the Employment Release Statement violates § 1681(b)(2)(A) (Counts One and Two), Plaintiffs' brief relies on the Court's Order (ECF No. 59) denying DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 37), which states, without elaboration, that the Employment Release Statement "does not satisfy the disclosure and authorization requirements set forth in 15 U.S.C. § 1681b(b)(2)." However, in Plaintiff's Opposition to Defendants' Second Motion for Summary Judgment (ECF No. 176), Plaintiffs elaborate on that position. First, Plaintiffs contend that the disclosure form does not "clearly" disclose that a consumer report will be obtained because the form "actually misdirects the reasonable consumer to an alternate data source--government agencies." (ECF No. 176 at 8).

9

Moreover, "the disclosed government agencies are as a matter of law not capable of furnishing a 'consumer report' and are by definition not 'consumer reporting agencies.'" Id. Second, Plaintiffs contend that Defendants' Employment Release Statement does not contain the authorization required by § 1681b(b)(2)(A)(ii), because the form does not actually authorize Defendants to obtain applicants' consumer reports; rather, the form actually only authorizes "third party governmental agenc[ies] to release [the consumers'] records (hence the name of the form)." Id. at 9-10. At oral argument, Plaintiffs presented those same arguments in support of their currently pending motion for partial summary judgment (ECF No. 164), and Defendants responded to those arguments. For the reasons set forth below, the Court finds both of those arguments persuasive.

### 1. The Employment Release Statement

The text of the Employment Release Statement disclosure consists of the following:

> Prior to and for the duration of my employment with FTS USA, LLC (the "Company"), I understand that investigative background inquiries are going to be made on myself [sic]. I understand that the Company will be requesting information from various Federal, State, Local and other agencies which maintain records concerning my past activities relating to my driving history, credit, criminal, civil, and other experiences. These reports may also include inquiries regarding my educational history and past work experience and performance

10

> including reasons for termination of
> employment.
>
> I authorize, without reservation, <u>any party</u>
> <u>or agency contacted by the Company or its</u>
> <u>agents to furnish any of the above mentioned</u>
> <u>information</u> or any other information
> requested.
>
> A photocopy of this document is considered
> to be as valid as the original document.

(ECF No. 165-3) (emphasis added). At the top of the form, the
name of the company for which the background check is being
performed is printed next to its logo, and "*Employee Candidate*
Employment Release Statement" is printed in large, bold type.
Beneath the quoted text, spaces are provided for the applicant
or employee to sign and date the form and to print the project
location, the position for which the applicant is being
considered, and the applicant's full name, current address,
phone number, social security number, date of birth, and
driver's license number and issuing state. Id. At the bottom
of the form, there is a space where "[r]esidents of California,
Minnesota and Oklahoma only" can signify with a checkmark if
they "would like the background vendor to mail [them] a copy of
[their] consumer report[s]." Id.

### 2. Applicable Legal Framework

Section 1681(b)(2)(A) requires that:

> Except as provided in subparagraph (B)
> [dealing with applications for employment by
> mail, telephone, or computer], a person may

11

> not procure a consumer report, or cause a
> consumer report to be procured, for
> employment purposes with respect to any
> consumer, unless[:] (i) a clear and
> conspicuous disclosure has been made in
> writing to the consumer at any time before
> the report is procured or caused to be
> procured, in a document that consists solely
> of the disclosure, that a consumer report
> may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing
> (which authorization may be made on the
> documents referred to in clause (i)) the
> procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). The FCRA defines a "consumer

report" as:

> any written, oral, or other communication of
> any information by a consumer reporting
> agency bearing on a consumer's credit
> worthiness, credit standing, credit
> capacity, character, general reputation,
> personal characteristics, or mode of living
> which is used or expected to be used in
> whole or in part for the purposes of serving
> as a factor in establishing the consumer's
> eligibility for:...employment purposes[.]

15 U.S.C. § 1681a(d). In turn, a "consumer reporting agency" is

defined as:

> any person which, for monetary fees, dues,
> or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the
> practice of assembling or evaluating
> consumer credit information or other
> information on consumers for the purpose of
> furnishing consumer reports to third
> parties, and which uses any means or
> facility of interstate commerce for the
> purpose of preparing or furnishing consumer
> reports.

15 U.S.C. § 1681a(f).

Importantly for purposes of this motion, it is well-established that governmental agencies are not consumer reporting agencies because governmental agencies do not compile information on persons "for the purpose of furnishing consumer reports to third parties[,]" and because subjecting governmental agencies to the FCRA could potentially give rise to a host of constitutional issues. See, e.g., Arnold v. Capital One Servs., Inc., 2011 WL 864332, at *4 (E.D. Va. Mar. 10, 2011); Smith v. Busch Entm't Corp., 2009 WL 1608858 (E.D. Va. June 3, 2009). Logically, then, because a consumer report must be furnished by a consumer reporting agency, a background report furnished by a governmental agency cannot be a "consumer report."

### a. Clarity

Although § 1681b(b)(2)(A) and several other provisions of the FCRA require that the consumer receive a "clear and conspicuous" disclosure of certain information, the statute does not define "clear and conspicuous" as it appears in any provision. Furthermore, there is relatively little judicial authority interpreting this requirement. Therefore, courts have looked to FTC commentary, as well as decisions applying the Uniform Commercial Code ("UCC") and Truth in Lending Act ("TILA"), both of which contain the same language, to determine

the meaning of "clear and conspicuous" under the FCRA.[2]  See, e.g., Cole v. U.S. Capital, 389 F.3d 719, 729 (7th Cir. 2004) (citing Stevenson v. TRW Inc., 987 F.2d 288, 295 (5th Cir. 1993)).

FTC commentary and judicial authority interpreting the FCRA and TILA teach that "clear" disclosures to consumers must be "reasonably understandable."  See 16 C.F.R. § 680.3; Murr v. Capital One Bank (USA) N.A., 28 F. Supp. 3d 575, 591 (E.D. Va. 2014); Reardon v. ClosetMaid Corp., 2013 WL 6231606, at *6 (M.D. Pa. 2004) (holding that a § 1681b(b)(2)(A) disclosure was satisfactory because it was "in a reasonably understandable form, the amount of text on the page [was] minimal, and the disclosure appear[ed] in the opening sentence of the document such that it [was] readily noticeable to the consumer."). Recently, describing required disclosures in the context of digital advertising, the FTC further elaborated that "understandable" disclosures should "use clear language and syntax and avoid legalese or technical jargon.  Disclosures should be as simple and straightforward as possible."  FED. TRADE COMM'N, DOT COM DISCLOSURES:  HOW TO MAKE EFFECTIVE DISCLOSURES IN DIGITAL

---

[2] Because the Employment Release Statement fails to satisfy the "clarity" and "authorization" requirements of § 1681b(b)(2)(A), there is no need to consider whether the disclosure is "conspicuous."  Therefore, the remainder of the discussion herein addresses only the clarity and authorization requirements.

14

ADVERTISING 21 (2013). However, as the Third Circuit has noted, whether a disclosure is "reasonably understandable" must be assessed "in light of the difficulty of the matter being disclosed. The benchmark is the nature of the matter discussed." Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214, 220 (3d Cir. 2000).

Plaintiffs do not dispute that the language in the Employment Release Statement is simple, straightforward, and avoids legalese and technical jargon. In that sense, the Employment Release Statement is "reasonably understandable." As the Court has previously noted, however, that conclusion merely raises the question: what, exactly, must be reasonably understandable for a disclosure form to satisfy the requirements of § 1681b(b)(2)? Milbourne v. JRK Residential Am., LLC, 2016 WL 1071570, at *7 (E.D. Va. Mar. 15, 2016).

In this case, it is reasonably understandable from the Employment Release Statement that Defendants would be obtaining background reports that are not consumer reports. The Employment Release Statement specifies that "the Company will be requesting information from various Federal, State, Local and other agencies[.]" The explicit reference to gathering information from "Federal, State, [and] Local" agencies strongly implies that "other agencies" are governmental or quasi-governmental as well.

From the standpoint of the reasonable consumer, that conclusion follows from simple reading comprehension skills. From a legal perspective, however, two basic canons of textual interpretation teach the same result. The first, noscitur a sociis, instructs that "a word may be known by the company it keeps." Russell Motor Car Co. v. United States, 261 U.S. 514, 519 (1923). The second, ejusdem generis, "limits general terms which follow specific ones to matters similar to those specified." Gooch v. United States, 297 U.S. 124, 128 (1936). Both of those canons reinforce the conclusion that follows from applying the elementary concept of context clues: the word "other" must be interpreted in harmony with its companions "federal, state, [and] local." Thus, based on the language of the Employment Release Statement, the reasonable consumer would apprehend that Defendants would be requesting information directly from various governmental agencies, not consumer reporting agencies. Simply put, the disclosure misleads consumers as to the sources from which their personal information would be obtained. That misdirection does not satisfy the clarity requirement of § 1681b(b)(2)(A).

Defendants contend that this case is governed by the Court's recent decision in Milbourne, 2016 WL 1071570. (Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. Mem. in Opp.," ECF No. 166) at

18-20).  In that case, the Court granted the defendant's motion for summary judgment on the adequacy of the form under § 1681b(b)(2), even though its disclosure form used the term "background report" in lieu of "consumer report" and did not contain the phrase "consumer reporting agency."  Id. at *8. However, there is a crucial distinction between the disclosure form at issue in Milbourne and the Employment Release Statement at issue here:  the disclosure form in Milbourne, even though it did not provide specific information as to the origins of the background reports, did not affirmatively mislead consumers as to the sources from which their personal information would be obtained.  Here, the text of the Employment Release Statement tells the consumer that Defendants would be procuring background reports directly from government sources, giving an impression of reliability that would be absent were the source of information unspecified or revealed to be consumer reporting agencies, which are notoriously inaccurate.  Therefore, the Employment Release Statement is easily distinguishable from the standalone disclosure form found to be sufficient in Milbourne.

Moreover, the appearance of the term "consumer report" at the very bottom of the Employment Release Statement does not save Defendants.  (Def. Mem. in Opp. at 21).  The full text of that portion of the form, found beneath the blank designated for the consumer's signature, provides:  **"Residents of California,**

17

**Minnesota and Oklahoma Only**: Please check here if you would like the background vendor to mail you a copy of your consumer report." (ECF No. 165-3) (emphasis in original). Located at the end of the last sentence at the bottom of the form, beneath the candidate's information, the term is certainly not conspicuous. Presumably, given the bolded preface to that sentence, most consumers who are not residents of California, Minnesota, and Oklahoma would not even read that section of the form. In any event, the inclusion of the phrase "consumer report" at the end of the form is insufficient to clarify the prominent and misleading disclosure above it. Therefore, the disclosure found in the Employment Release Statement does not satisfy the clarity requirement of § 1681b(b)(2).

### b. Authorization

Section 1681b(b)(2) also requires that a person obtain the consumer's written authorization before obtaining a consumer report for employment purposes. 15 U.S.C. § 1681b(b)(2)(A)(ii). The Employment Release Statement does, at first glance, appear to contain an authorization. However, as Plaintiffs point out, the authorization in the Employment Release Statement does not authorize Defendants to obtain a consumer report. The Employment Release Statement actually provides: "I authorize, without reservation, any party or agency contacted by the Company or its agents to furnish any of the above mentioned

18

information or any other information requested." (ECF No. 165-3) (emphasis added). That sentence plainly authorizes persons contacted by Defendants to release the plaintiffs' personal information (hence the name of the form). It does not purport to authorize Defendants to obtain that information.

Moreover, for the reasons set forth in the preceding section, the text preceding the authorization gives leads to the conclusion that the phrase "party or agency" found in the authorization refers to federal, state, or local governmental actors. Thus, even if one were to assume that the authorization language implicitly also authorized the pursuit of information by Defendants (which it does not), the misleading nature of the immediately preceding disclosure forecloses the inference that the information released by the authorization is a "consumer report." Therefore, the Employment Release Statement also does not satisfy § 1681b(b)(2)(A)'s "authorization" requirement.

For the foregoing reasons, Plaintiffs' motion for summary judgment that the Employment Release Form violates § 1681b(b)(2) will be granted.

### C. Plaintiffs are Entitled to Summary Judgment that Defendants Violated 15 U.S.C. § 1681b(b)(3) (Counts Three and Four)

Plaintiffs contend that they are entitled to summary judgment that Defendants violated § 1681b(b)(3) because "[n]either UniTek nor any of its subsidiaries, including FTS,

ever provides to applicants or employees against whom adverse action is taken based upon their consumer reports any pre-adverse action notice or a copy of their consumer reports or a summary of their FCRA rights as required by § 1681b(b)(3)(A)(i) and (ii)." (Pl. Mem. at 6-7). Moreover, Plaintiffs argue that, although Defendants apparently believed that their third-party background check vendors were sending the required pre-adverse action notices, the vendors never actually did so. Id. at 7.

Section 1681b(b)(3) requires that:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

15 U.S.C. § 1681b(b)(3). The FCRA defines an "adverse action" in this context as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(B)(ii).

Conlin, Defendants' designee on this topic under Fed. R. Civ. P. 30(b)(6), specifically testified that neither UniTek nor any of its subsidiaries sent any such communications. (Conlin Dep. at 104-105, 133). Thus, the undisputed record shows that Defendants never sent the required information to Adverse Action

20

Sub-Class members before taking adverse employment action. Conlin testified that "[t]he pre-adverse was always handled by the background vendors." (Def. Mem. in Opp. at 27-30; Conlin Dep. at 104).

However, the record disproves Defendants' assumption that its background check vendors provided the required notices. For example, the Service Agreement between FTS and BGC actually provides that, before taking adverse employment action based on a BGC report, "the Customer [i.e., Defendants] will provide a copy of the report to the individual and a description, in writing, of the individual's rights under the FCRA." (ECF No. 165-11, at 1). BGC's president, Craig Kessler, also testified that BGC did not send § 1681b(b)(3) notices on Defendants' behalf. (ECF No. 165-10, Declaration of Craig Kessler). Similarly, the Service Agreement between UniTek and CSS Test, Inc. ("CSS"), another background check vendor, provides no mention of § 1681b(b)(3) notices. (ECF No. 165-9). As Plaintiffs point out, "neither UniTek nor FTS have produced copies of any pre-adverse action notices that were sent to any member of the adverse action class."[3] (Pl. Mem. at 7). On this

---

[3] In conjunction with their motion for summary judgment, Defendants filed a declaration with previously undisclosed evidence relating to adverse action notices sent by CSS. (ECF No. 159). However, Defendants failed to timely disclose that evidence in accordance with the rules of discovery and the Court's previous orders. Therefore, on Plaintiff's motion, the

21

record, Defendants have presented no genuine dispute of material fact to show that they or their third-party vendors provided the required information to any members of the Adverse Action Sub-Class in conjunction with the class members' employment with Defendants. Accordingly, summary judgment will be granted in favor of the Adverse Action Sub-Class on the issue whether the Employee Release Statement violates § 1681b(b)(3).

### D. **Plaintiffs are Not Entitled to Summary Judgment on the Issue of Willfulness.**

Nearly the entirety of Plaintiffs' brief in support of their motion for summary judgment is directed to the issue of willfulness. Essentially, Plaintiffs argue that Defendants' violations of the FCRA were willful because Defendants simply ignored their obligations to comply with the FCRA: they "had literally no FCRA procedure, no compliance review, no attorney review of the process or the need for a policy. Nothing." (Pl. Mem. at 13).

In Safeco Ins. Co. v. Burr, the Supreme Court relied on the common law definition of "willfulness" to conclude that willful violations of the FCRA include reckless violations as well as knowing or intentional violations. 551 U.S. 47 (2007). Under the common law understanding of willfulness, the term included "not only knowing violations of a standard, but reckless ones as

---

Court struck that evidence, and it will not be considered in this case. (ECF No. 217).

well." Id. at 58 (internal citations omitted). The Supreme Court then defined recklessness as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

Accordingly, a company "does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. Conversely, where a party acts on an interpretation of the FCRA that has some basis in the statutory text, and there is no contrary guidance from the Federal Trade Commission or courts of appeals, the party's actions are not objectively unreasonable and, therefore, do not involve an unjustifiably high risk of harm. Id. at 69-70. Because "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," courts have frequently held that willfulness is a question of fact for the jury. Dalton v. Capital Assoc. Indus., Inc., 257 F.3d 409, 418 (internal citation omitted); see also Manuel v. Wells Fargo Bank, Nat'l Ass'n, 123 F. Supp. 3d 810, 829 (E.D. Va. 2015); Edwards v. Toys "R" us, 527 F. Supp. 2d 1197, 1210 (C.D. Cal.

2007) ("Willfulness under the FCRA is generally a question of fact for the jury.").

Plaintiffs have presented no evidence that Defendants knowingly or intentionally violated the FCRA. Thus, Plaintiffs must show that Defendants' violations constituted "'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Safeco, 551 U.S. at 68 (internal citation omitted). The Court cannot conclude that that is so as a matter of law.

First, as to the Impermissible Use Class, Plaintiffs have not shown that Defendants' interpretation of § 1681b(b)(2) was objectively unreasonable. As the Court observed in Milbourne, administrative and judicial guidance concerning § 1681b(b)(2)'s clarity requirement is all but non-existent, and district courts have differed on whether the phrase "consumer report" or "consumer reporting agency" must be included in the disclosure. 2016 WL 1071570, at *9. Indeed, the Court in Milbourne noted that that case was "a close one." Id. at *8. Therefore, the Court declines to resolve on summary judgment whether Defendants' adoption of the Employment Release Statement was a willful violation of the FCRA.

Second, as to the Adverse Action Sub-Class, the Court cannot say as a matter of law that it was objectively unreasonable for Defendants to rely on their third-party

24

background check vendors to supply pre-adverse action notices. In opposing Plaintiffs' motion on this point, Defendants first point to several e-mails from BGC that Defendants interpreted to mean that BGC would send pre-adverse action notices on Defendants' behalf. (ECF No. 168-2). Second, Defendants contend that their violations were not willful because Conlin took steps to educate himself and his successor on the FCRA. (Conlin Dep. at 116). Third, Defendants add, after an internal review of procedures, UniTek began sending its own pre- and post-adverse action notices. (Conlin Dep. at 114-115). Although Defendants' proof on this point appears rather thin, whether Defendants' purported reliance on their background check vendors was objectively unreasonable remains a question best suited to resolution at trial.

For the foregoing reasons, Plaintiffs' motion for summary judgment on the issue of willfulness will be denied.

## CONCLUSION

For the reasons, and to the extent, set forth above, PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 164) will be granted in part and denied in part.

It is so ORDERED.

_____/s/_____ _ℛℰℱ_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 30, 2016